E-FILED
Monday, 30 November, 2015  03:46:08 PM
Clerk, U.S. District Court, ILCD

SCANNED at PCC and E-Mailed
11.30.15 (date) by ___ (initial)
37 (# of pages)

United States District Court
Central District of Illinois

Christopher Knox #B61090

    Plaintiff Pro Se

        _ V _

S.A. Godinez;

~~~~~~~~~~~; Dr. Louis sHicker, m.D.; Dr. Hinton; John Doe
Gladsy Taylor; Randy Pfister; Dr. Andrew Tilden;
Dr. John Garlic; Dr. Jennings; Dr. John Doe, m.D.
Guy Pierce; Marcus Hardy; Maj - sHull; Maj - Hobart;
Maj - Prentice; Chad Brown; Illinois Department of Corrections;
and Wexford Health sources, Inc .. Et.al .

        Defendants

No.

## Complaint

Now comes the Plaintiff, Christopher Knox, Prose and as an layman ___
for His complaint against all the Abovenamed Defendants; (collectively;
the " Individual Defendants"); and the Department, a Public entity,
state as follows:

## Nature of the case

This lawsuit is brought Pursuant to 42 u.s.c.§ 1983, to Redress the
Violations of the Plaintiff's Rights (1). under the Eighth and ___
Fourteenth amendments to the u.s. Constitution to be free of cruel
and unusual Punishment while He is incarcerated at Pontiac
correctional center North administrative Detention unit ( hereinafter
Referred to as NADu); and (2). under the Fourteenth amendment to
Receive Individualized mental Health treatment by Professionals exercising
Professional Judgment; and Pursuant to the Americans with Disabilities
Act ( the " ADA"). 42 u.s.c.§§ 12131, Et seQ., and the Rehabilitation
Act ( the " ReHab Act") 29 u.s.c.§ 794, to be free of Discrimination
on Account of His Disabilities ... * Plaintiff' seek Damages from the
individual Defendants, who are employees or agents of the Department; a
Judgment declaring the Defendants acts unconstitutional and violative
of the ADA and the ReHab Act; and an Injunction Directing them
to Halt their unlawful conduct .... *

PARTIES

1. Plaintiff: CHRISTOPHER KNOX, is an inmate who is currently within the Illinois Department of Corrections and is incarcerated at Pontiac Correctional Center ( NADN ) ( Pontiac ) ...*

DEFENDANTS

2. THE Department is an Illinois state Department that is responsible for the care, custody, treatment, and rehabilitation of all persons _____ committed to it's custody, and for all Illinois correctional _____ institutions ..... * The Department is sued based on the ADA and Rehab Act ...*

3. Defendant, ~~Pat~~ S.A. Godinez, is director of the Department and has overall responsibility for the administrative of all correctional facilities within the state .. He has personal, first-hand knowledge of the operations of Pontiac. He resides in Springfield, Illinois ....*

4. Defendant, DR. LOUIS SHICKER; is the medical director of the said Department and, as such, has overall responsibility for providing health care to prisoners of Pontiac ( NADN ) including mental health care. He resides in Chicago, Illinois .....*

5. Defendant, DR. HINTON, is chief of mental health services of the Department and, as such, has overall responsibility for providing mental health care to prisoners of Pontiac. He resides in _____ Springfield, Illinois .... *

6. Defendant, GLADSY TAYLOR, is associate director of the Department and, as such, has overall responsibility for deciding who is _____ transferred into Pontiac ( NADN ). Defendant, TAYLOR has personal knowledge of most transfer decisions. Including the decision to transfer many of the seriously mentally ill prisoners who have been sent to Pontiac ( NADN ) ....*

2

7.  DEFENDANT, RANDY PFISTER, IS THE WARDEN OF PONTIAC. WARDEN ___ PFISTER, IS THE CHIEF ADMINISTRATIVE OFFICER OF PONTIAC AND, AS SUCH, HAS ULTIMATE RESPONSIBILITY FOR THE ENTIRE OPERATION OF THE INSTITUTION, INCLUDING IMPLEMENTING ALL STATE LAWS AND THE DEPARTMENT POLICIES, PRACTICES, AND PROCEDURES AFFECTING PRISONERS CONFINED AT PONTIAC ( NADM ) .....*

8.  DEFENDANT, DR. ANDREW TILDEN, IS THE MEDICAL DIRECTOR OF PONTIAC. HE OVERSEES THE HEALTH CARE UNIT AT PONTIAC, WHICH IS RESPONSIBLE FOR PROVIDING MEDICAL AND MENTAL HEALTH SERVICES FOR PRISONERS ...*

9.  DEFENDANT, DR. JOHN GARLIC, IS THE SUPERVISING CLINICAL PSYCHOLOGIST AT PONTIAC. HE PROVIDES MENTAL HEALTH SERVICES TO PRISONERS AT PONTIAC AND OVERSEES THE STAFF OF APPROXIMATELY FIVE SOCIAL WORKER WHO SERVE AS THE PRISON'S MENTAL HEALTH PROFESSIONALS ...*

10. DEFENDANT, DR. JENNINGS, IS A CLINICAL PSYCHOLOGIST AT PONTIAC. SHE PROVIDES MENTAL HEALTH SERVICES TO PRISONERS AT PONTIAC .....*

11. DEFENDANT, DR. JOHN DOE, IS THE PSYCHIATRIST AT PONTIAC. HE PROVIDES MENTAL HEALTH SERVICES TO PRISONERS AT PONTIAC AND ADMINISTERS PSYCHOTROPIC DRUGS TO THEM .....*

12. DEFENDANT, GUY PEARCE, IS THE ASSISTANT WARDEN OF OPERATION AND AS, SUCH IS RESPONSIBLE FOR SECURITY OF PONTIAC CORRECTIONAL CENTER AND DEFENDANT, PEARCE, HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF PONTIAC AND HE RESIDES IN PONTIAC, ILLINOIS ....*

13. DEFENDANT, MARCUS HARDY, IS THE DEPUTY DIRECTOR OF THE DEPARTMENT, AND, AS SUCH IS RESPONSIBLE FOR THE OPERATION OF PONTIAC CORRECTIONAL CENTER AND DEFENDANT HARDY. HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF PONTIAC AND HE RESIDES IN SPRINGFIELD, ILLINOIS ...*

14. DEFENDANTS, SHULL, HOBART, AND PRENTICE; ARE CORRECTIONAL MAJOR'S OF THE DEPARTMENT AND AS SUCH ARE RESPONSIBLE FOR SECURITY AT THE PONTIAC CORRECTIONAL CENTER; AND DEFENDANTS HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF PONTIAC AND ( NADU ) ....*

15. DEFENDANT, CHAD BROWN, IS THE CHAIRPERSON FOR BOTH THE ADJUSTMENT COMMITTEE AND THE REVIEW COMMITTEE AND AS SUCH RESPONSIBLE FOR DECIDING WHO BE REMOVED FOR ADMINISTRATIVE DETENTION AND DEFENDANT, BROWN, HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF PONTIAC ( NADU ) ....*

16. DEFENDANT, WEXFORD HEALTH SOURCES, Inc. IS A CORPORATION HEADQUARTERED IN PITTSBURGH, PENNSYLVANIA WHICH PROVIDES HEALTH SERVICES, INCLUDING MENTAL HEALTH SERVICES THROUGHOUT THE IDOC BY CONTRACT WITH THE STATE OF ILLINOIS ....*

17. AT ALL TIMES RELEVANT TO THIS ACTION, DEFENDANTS ACTED UNDER THE COLOR OF THE LAWS, REGULATIONS, AND CUSTOMS OF THE STATE OF ILLINOIS .. ALL DEFENDANTS ARE SUED IN BOTH THEIR INDIVIDUAL AND OFFICIAL CAPACITIES ...* THE DEFENDANTS' ACTIONS CONSTITUTED "STATE ACTION" AS DEFINED UNDER FEDERAL LAW ....*

## JURISDICTION AND VENUE

18. THE COURT HAS JURISDICTION OF THIS CAUSE OF ACTION AND PURSUANT TO 28 U.S.C. §§ 1331 AND 1343 (A) (3) AND (4). DECLARATORY RELIEF IS SOUGHT PURSUANT TO 28 U.S.C. §§ 2201 AND 2202 .* VENUE IS PROPER IN THE CENTRAL DISTRICT OF ILLINOIS UNDER 28 U.S.C. § 1391 (B) BECAUSE AT LEAST ONE OF THE DEFENDANTS RESIDES IN THE DISTRICT AND A SUBSTANTIAL PART OF THE EVENTS AND OMISSIONS GIVING RISE TO PLAINTIFFS' CLAIMS OCCURRED IN THE DISTRICT ....*

EXHAUSTION oF REMEDY.

19. ON OR ABOUT MARCH 22, 2015. to APRIL 1, 2015; THE named PLAINTIFF FILED EMERGENCY GRIEVANCE's COMPLAINING THAT THE CONDITIONS AND mental HEALTH TReATMENT AT PONTIAC ( NADN ) VIOLATES THE EIGHTH AMENDMENT AND THAT AND THAT DEFENDANTS' DISCRIMINATED AGAINST PLAINTIFF ON ACCOUNT OF HIS mental DISABILITY VOILATED THE ADA AND REHAB ACT....* THE GRIEVANCE's PARTICULARIZED THESE COMPLAINTS BY ATTACHING COPIES OF THIS COMPLAINT, WHICH CONTAINS CLAIMS ___ SUBSTANTIALLY SIMILAR to THESE IN THIS LAWSUIT...........* See ( EX. A ) AFFIDAVIT OF. MR. KNOX ....*

20. ON MAY 2, 2015. PLAINTIFF SENT A LETTER to DEFENDANT PFISTER ASKING HIM to ACT ON THESE GRIEVANCE's; DEFENDANT PFISTER FAILED AND REFUSED to ACT OR RESPOND to THESE GRIEVANCE's THAT WERE FILED DIRECTLY to DEFENDANT PFISTER....* See ( EX. A) AFFIDAVIT OF. MR. KNOX....*

21. ON NOVEMBER 18. 2015. I StoP DEFENDANT HOBART AND AQUIRED ABOUT MY EMERGENCY GRIEVANCE's REGARDING THE FACTS ALLEGED IN THE COMPLAINT; DEFENDANT HOBART told PLAINTIFF THAT IF PLAINTIFF HAD CONTINUE to FILE GRIEVANCE's COMPLAINING; THAT HE WAS GOING To ACTIVATE THE Cell EXTRACTION Team like THEY DID ON 9.16. 2015; AND THAT HE WAS GOING to MAKE SURE THAT THEY BREAK MY LEG's JUST like THEY DID HENRY MOUNSON...* See ( EX. A) ___ AFFIDAVIT OF. MR. KNOX...*

22. DEFENDANTS HAVE THREATEN PLAINTIFF WITH PHYSICAL BODILY INJURY, IF PLAINTIFF CONTINUES to FILE GRIEVANCE's COMPLAINING ABOUT THE FACTS BEING ALLEGED....* PLAINTIFF IS IN IMMINENT DANGER OF BOTH PHYSICAL AND IRREPARABLE HARM.......* See ( EX. A) AFFIDAVIT OF. MR. KNOX....*

5

23. In any event; defendants, assert AFFIRMATIVE Defense; of Failure to exhaust administrative remedy; that are pertaining to the facts alleged; plaintiff have filed emergency grievance's pertaining to the facts alleged and went through the proper grievance procedure as outlined in 20 Ill. Admin. Code. §504.840 and the department official's have refused to respond and due to the custom's practices of prison official's not responding or addressing emergency grievance's and for prison official's threatening plaintiff with bodily injury if plaintiff had continued to file grievance's complaining about the facts...* thus, preventing him from exhaustion of his administrative remedy; thus; making the grievance procedure unavailable to the plaintiff and prison has threaten plaintiff with more bodily harm if plaintiffs' continue to file grievance's pertaining to the facts being alleged...*

## Allegations of Facts

A. As defendants John Doe; Taylor; Pfister; Dr. Garlic; Pierce; Shull; Hardy; Hobart; Prentice; Brown; Dr. Jennings; Dr. Doe; Dr. Hinton; are aware; Pontiac NADU House many prisoners who are seriously mentally ill....*

24. Pontiac correctional center (Pontiac) is a maximum security prison that holds protective custody (P.C.); general population (G.P.); and administrative detention (A.D)....*

25. Defendants have established an administrative detention unit (hereinafter referred to as NADU) in which house those prisoners in administrative detention (A/D) and administrative segregation (A/s) ....*

26. Pontiac new (NADU) is a free-standing unit; specifically designed to manage and control violent or seriously disruptive prisoners; the prisoners selected for placement at Pontiac (NADU) are those defendants deem the most violent and or potentially disruptive. It is well known that many seriously mentally ill prisoner's exhibit violent and assaultive behavior.....* and those whom prison official's has identified as STG - members...*

27. THE DECISION ABOUT WHICH OF Illinois PRISONER'S will be TRANSFERRED to PONTIAC NEW (NADU) OR OUT OF (NADU) IS MADE BY DEFENDANTS with INPUT FROM other PRISON _ OFFICIAL'S WHO SERVED UNDER THEIR _ SUPERVISION .....* THERE IS NO BAR to PLACING SERIOUSLY ill PRISONER'S AT PONTIAC NEW (NADU).....* DEFENDANTS do NOT SCREEN PRISONER'S ADEQUATELY WHEN THEY ARE TRANSFERRED to PONTIAC NEW (NADU) to DETERMINE IF THEY ARE SERIOUSLY MENTALLY ill; THEY DO NOT PROHIBIT THE TRANSFER OF PRISONER'S to PONTIAC (NADU) WHEN THEY KNOW THEM to be MENTALLY ill; THEY do NOT EXAMINE THEM ADEQUATELY AS THEY CONTINUE to RESIDE AT PONTIAC (NADU) to DETERMINE IF THEY HAVE decompensated to A GREATER degree than THEY WOULD HAVE AT ANOTHER FACILITY; AND THEY do NOT REMOVE PRISONERS FROM PONTIAC (NADU) even WHEN THEY KNOW THAT THE PRISONER'S PLACEMENT AT PONTIAC (NADU) HAS CAUSED HIM to decompensate MENTALLY....* BECAUSE OF THIS, A HIGH PERCENTAGE OF THE PRISONERS RESIDING AT PONTIAC (NADU) ARE IN FACT SERIOUSLY MENTALLY ILL ......*

28. AT PONTIAC (NADU), PRISONERS ARE SUBJECTED to NEAR TOTAL SOCIAL ISOLATION IN AN EXTRAORDINARILY RESTRICTED ENVIRONMENT. THESE CONDITIONS ARE KNOWN to CAUSE SERIOUS PSYCHOLOGICAL PROBLEMS IN SOME PRISONERS, NOTABLY THOSE WHO HAVE SERIOUS PRE _ EXISTING MENTAL illnesses, INCLUDING CHRONIC LONG _ STANDING DEPRESSION, SCHIZOPHRENIA, AND OTHER LONG _ STANDING, SEVERE MENTAL illnesses, THOSE WITH CERTAIN PRE _ EXISTING DISORDERS SUCH AS BORDERLINE PERSONALITY DISORDERS AND, IN SOME CASES, THOSE WITH NO _ PRE _ EXISTING DISORDER .. THE PSYCHOLOGICAL PROBLEMS DISPLAYED BY AT- RISK PRISONERS INCLUDE SYMPTOMS SUCH AS PERCEPTUAL DISTURBANCES (FOR EXAMPLE, HALLUCINATIONS), HYPERSENSITIVITY to EXTERNAL STIMULATION, AGGRESSIVE FANTASIES, OVERT PARANOIA, PROBLEMS WITH CONCENTRATING AND WITH CONTROLLING IMPULES, ANXIETY / PANIC DISORDER, AND OVERT PSYCHOTIC DISORGANIZATION, AS WELL AS ATTEMPTED SUICIDE AND PHYSICAL TRAUMA INCLUDING SELF _ MUTILATION .....*

29. Prisoners who begin to experience these serious psychological injuries are caught in a cycle that worsens their illnesses.. Their illnesses makes them act destructively toward themselves, their environment, or the staff...* In response, Defendants ignore their illnesses and punish their conduct...* This punitive treatment exacerbates their illnesses: which increases their destructiveness.. Day after day, certain seriously mentally ill prisoners at Pontiac ( NADU) cut their arms, necks, and abdomens..* Repeatedly, some of these prisoners attempt to hang themselves or attempt to swallow broken pieces of mirror. Prisoners cut on themselves or insert foreign-objects into their penis's..* One of these prisoners has been known to create large red wounds on his ___ shoulders from biting himself; another has been observed eating his own flesh ....*

30. Defendants respond to this deranged behavior with punishment such as the so - called cell extraction. A procedure in which members of a tactical team, armed with batons and protected with ___ plastic shields, spray burning chemical substances in the inmate's face and then forcibly " extract " him from his cell.. They order prisoner's cell's to be stripped of all property ( even their mattress and blanket ) and force the men to live in this bereft environment, often without clothes or a blanket, for days at a time ....* They order plexiglass shields to be placed in front of the prisoner's doors, making any communication even more difficult ...* They order prisoner's centrally controlled water ___ supply to be shut off for hours or days at a time ....*

31. Mentally ill prisoners also are punished by the use of excessive force by prison guards. Although Defendants presumably do not officially sanction this conduct, they unofficially condone it by creating an atmosphere of terror and brutality at Pontiac ( NADU); failing to fully investigate prisoner's complaints of excessive force; ___ failing to punish the guards who use excessive force; and punishing of prisoners who complain about it .....*

8

32. MENTALLY ill PRISONERS Also ARE Given mental Health tREAtment that IN FACT IS PuniSHment AnD noT tREAtment....* THEY ARE FORCibLY AnD AGAinsT tHEiR will Given InJActions of medicine to sedate them....* THEY ARE Bound IN FOuR_Point REstRAints Sometimes FoR HouRs oR DAYs AT A time AnD Somatimes while thaY ARE completeLY nAked... THEY ARE stRiPPED of All theiR clothes AnD HELD IN cold " StRiP calls " In tHE Health cARE unit oR on one of rHE ELevATED SECuRiTY GALLERY whicH ARE bARREn of AnYthinG EXCEPT A cement bed AnD A toilet, wHERE THEY CAN EARN rHE RiGHt to Get tHEiR clothes back onLY BY PROMiSinG tHEY will noT tRY to kill tHEmselves .....*

AllEGATiOns of FActs

B. DEFenDAnts, JoHn DOE, tAYloR; PFEstER; PIERCE; sHull; HARDY; HobARt; PREntICE; BROWn; ARE subJEctinG PlAintiffs' to conDitions of confinement; In ViolAtion of Both tHE EiGHtH AnD FouRteentH AmenDMents to rHE U.S. Const.....*

PlAintiFF IS In ImmienT DAnGER of Both PHYSicAL AnD iRREPARAble InJuRY; AnD if noT tReated will ResulT PHYSicAL HARM oR DeAth....* WHERAS tHE conDitions AT Pont.ac ( NADU) ARE DesiGned to AnD Do cAuse PsYcHoloGicAl DAmaGe .....*

33. SERiOUSLY mentALLY ill PRisoneRs EntER PoNTiac NEW ( NADU) AT tHEiR PERiL, FoR tHE conDitions tHERE ARe DesiGned to AnD Do cAuses ___ PsYcHoloGicAl DAmaGe....* AT ( NADU) contRol is ExERcised tHROuGH ExtREme. SociAl isolation, seveRELY REstRicted movement, AnD An EnviRonment tHAT seveRELY REstRicts stimulation....* A GAuGe AREA tHAT oPeRate All liGHts AnD DoOks AnD wAteR supplY contRoled BY SecuRitY stAFF, Video CameRas PRovides visuAl suRveillAnce. communication Is PRovided without HumAn ContAct AnD Allow GuaRDs to eAVEsdRoP on PRisoneRs .....*

34. Pontiac NEW (NADU) consists of EIGHTH self-contained galleries, each having 52 cells. To restrict the movement of prisoners, each gallery is a self-contained living unit that holds a shower's a small law library, a designated nurses station, a multipurpose room used by security, medical, and mental health staff, and a central cage booth for corrections staff. At Pontiac (NADU) administrative-segregation inmates - each spends 23 to 24 hours a day, seven days a week in a single small cell. Each cell contains a steel or concrete bed, a stainless steel combination sink and toilet; mirrors are prohibited to segregation inmates. A shelf that serves as a desk, and (for some inmates) two boxes for storing personal property.....* none of the cells have windows; windows are located outside the cells, windows have filthy films, making it possible for defendants to say that the cells has natural light but impossible for the inmate to see anything; unless you have a cell in front of the windows. The doors to the cells is made of heavy gauge steel perforated with dime sized holds that are difficult to see through. Cells have plexiglass on the door's and some doors are steel bars... each door contains a slot for food; called a chuckhole....* the prisoners view through the perforated steel mesh is of a raw concrete wall and the occasional department employees who passes by; prisoners cannot see each other.....*

35. Prisoners do not leave these cells for meals, which are served on styrofoam trays pushed through the chuckhole; the trays and the utensils must be placed back in the chuckhole within 30 minutes. Prisoners do not leave to visit with other prisoners; such contact is forbidden..* they do not leave for communal religious services; educational programs, or jobs, none of which exist at Pontiac (NADU)....* those who can read (many prisoners at NADU have only rudimentary reading and writing skills) may keep some books in their cells.....*

36. Most prisoners cannot listen to the radio or watch television, which are provided only for the prisoners in administrative detention who have advanced to Phase I, II, and III, something few mentally ill _____ prisoners can do...* ( Prisoners in NADU are either in _____ administrative detention, which is ostensibly a non-disciplinary status of confinement that removes an inmate from general population (AD), or administrative segregation resulting from punishment ordered after a rule infraction.) ( AS ) ....*

37. Prisoners cannot see or socialize with other prisoners, except by yelling up and down the gallery, where the extreme echoing effect makes it hard to hear and understand...* on nearly every gallery one or two prisoners scream and bang on cell walls and doors throughout the day and night so that other prisoners often cannot sleep ......*

38. Prisoners regularly leave their cells only to exercise or take a shower one to three times a week, occasionally, they visit the law library or go to the multipurpose room to see a medical staff or a social worker; only rarely do they travel outside the unit to the _____ health care unit or the visitor's room .....*

39. Whenever an inmate leaves his cell for any purpose, and for each time he he returns, he must submit to a full body cavity search.. First, he removes, his clothes and hands them to the guard, standing naked, he must display his ears, feet, hands, then he must bend over, his back to the guards and spread his buttocks.. He must raise his penis so the guard can examine his testicle...* He may be ordered to expose the glans around the tip of his penis or if he is not circumcised, to pull back the foreskin ......*

40. AFTER DRESSING, HE IS HANDCUFFED AND THEN, KNEELING OR LYING DOWN THE FLOOR, HIS LEGS ARE SHACKLED BY GUARDS WEARING latex OR leather Gloves ...* IF HE is moving OUTSIDE HIS Gallery he IS SURROUNDED BY ONE OR TWO GUARDS, WHO Place THEIR ARMS ON HIS CHEST WHO has ACCESS To A SEMI_ AUTOMATIC RIFLE ...* THESE PUNITIVE AND HUMILIATING EXCHANGES ARE THE ONLY time A INMATE IN ( A/S ) fEELS ANOTHER PERSONS touch, EXCEPT WHEN he is EXAMINED BY A DOCTOR, WHICH USUALLY takes Place WHILE THE INMATE'S LEG'S ARE SHACKLED AND HIS ARMS ARE HELD BY GUARDS .....*

41. EXERCISE TAKES Place IN AN INDIVIDUAL MONKEY, CAGES, THAT ARE CREATED TO CAUSE A HUMAN_ bEING TO PSYCHOLOGICALLY AND PHYSICALLY TRANSFORM his MIND_ FRAME AND bEHAVIOR INTO MONKEY AND/OR ANIMAL likENESS iF CONTINUOUSLY FORCED INTO this TYPE OF ENVIRONMENT WHERE INMATES WHO ARE IN ( A/S ) ARE locked IN THEIR CELLS 23 OR 24 HOURS A DAY 7_ DAYS A WEEK WITH NO PHYSICAL social HUMAN_ INTERACTION; THE YARD CAGES ALLOWS PRISONERS TO THROW FECES ON ONE ANOTHER WITHOUT ANY WAY TO PROTECT THEMSELVES ...* THE YARD CAGES CONTAINS NO BASKETBALL HOOP'S, NO DRINKING FOUNTAIN, AND NO toilet....* THE ONLY EQUIPMENT IS A PULLUP BAR, YET MANY SERIOUSLY ILL PRISONERS GO FOR WEEKS WITHOUT GOING TO THE YARD bECAUSE THEIR PRIVILEGES HAVE bEEN REMOVED FOR DISCIPLINARY REASONS OR bECAUSE THEIR MENTAL ILLNESSES MAKES THEM TEARFUL OF LEAVING OR too DEPRESSED TO MOVE. ......*

42. THE INMATES CONTACT WITH FAMILY AND FRIENDS OUTSIDE PRISON IS INFREQUENT, UNCOMFORTABLE, AND WITHOUT PHYSICAL CONTACT. INMATES IN ADMINISTRATIVE SEGREGATION ( A/S ). PHONE CALLS ARE limited ONLY TO EMERGENCIES SUCH AS THE DEATH OF A FAMILY MEMBER ( lEGAL CALLS ALSO ARE limited TO " EXTRAORDINARY CIRCUMSTANCES " ). VISITS ARE CUMBERSOME, EXPENSIVE, SHORT, AND INHOSPITABLE. EXCEPT FOR VISITS BY LAWYERS, EACH VISIT MUST bE ARRANGED WEEKS IN ADVANCE FOR A SPECIFIC TIME AND IS FORFEITED IF THE VISITER IS late ...X

most visitors must make an overnight care trip, since Pontiac is far from some of the counties where the families of some prisoners resides ...* non-legal visits last only 1 hour; a thick glass shield separates the visitor and inmate; who talk through a speaker that distorts voices and cuts off a conversation if one person talks or laughs while the other is talking. All conversation ( except between attorney and client ) is recorded. The prisoners leg's are shackled and chained to a bolt in the floor, or the prisoner is in segregation status, he wears a wastechain and leg's - irons and are shackled to the floor by a short chain makes it difficult for him to gesture or even to scratch his face ...*

43. For some prisoners, these conditions of social isolation, restricted movement, and restricted external stimulation may be bearable. For seriously mentally ill prisoners, however, the conditions causes suffering that amounts to cruel and unusual punishment ...*

## ALLEGATIONS OF FACTS

C. DEFENDANTS, DR. SHICKER, DR. HINTON, DR. TILDEN, DR. JENNINGS, DR. JOHN DOE, DR. CHARLIE; JOHN DOE, PIERCE, HARDY, SHULL, IDOC HOBART, PRENTICE; BROWN; AND WEXFORD HEALTH SOURCE, INC, HAVE ACTED WITH DELIBERATE INDIFFERENT TO PLAINTIFFS' SERIOUS MENTAL ILLNESSES ...

1. DEFENDANTS DELIBERATE INDIFFERENCE TO PLAINTIFFS' SERIOUS MENTAL HEALTH NEED IS SHOWN BY SYSTEMIC DEFICIENCIES IN THE MENTAL HEALTH CARE SYSTEM AT PONTIAC NADH ...

44. The deliberate indifference of defendants to the serious mental health needs of plaintiffs' is demonstrated by systemic ——— deficiencies in the staffing of facilities, and procedures of the mental health care system at Pontiac ( NADH ) which make unnecessary suffering inevitable ...*

In creating and then failing and refusing to cure the systemic deficiencies, defendants have acted with deliberate indifference to the serious mental health needs of plaintiffs and then doing so, have unnecessarily and wantonly inflicted severe pain on plaintiff ....* These systemic deficiencies, which are the overall responsibility of defendant John Doe and the particular responsibility of defendants Drs. Shicker, Garlic, Tilden, Jennings, and John Doe, are as follows:

(A). Defendants avoid treating inmates with mental illnesses by failing to identify inmates with mental illness. Despite an Administrative Directive which requires that "All offenders [] transferring into a facility shall be screened and, when appropriate, referred to a mental professional." The mental health screening at Pontiac New (NADU) is arbitrary, haphazard, and riddled with gaps.. Most prisoners do not receive such screening ...* There is no requirement that mentally ill prisoners be excluded and there is no adequate systematic program for screening and evaluating the mental health status of prisoners being proposed for transfer for Pontiac New (NADU); in fact, prisoners known to have histories of serious mental illness are transferred to Pontiac New(NADU) ....*

(B). There is no requirement that prisoners who decompensate at Pontiac New (ADU) be removed from the facility and no adequate systematic program for identifying such prisoners...* Instead, defendants ignore the obvious signs of prisoners' mental deterioration. Despite their knowledge that the environment at Pontiac (NADU) test even the strongest inmate ....*

14

(c). THERE IS no ADEQuate sYstomatic PROGRAM to PROVide CARE AT PONTIAC ( NADU ) FoR SERIOUSLY menTallY ill PRISONERS ...* insTead, THE mental Health sYstem operates AS An ADJunct to tHE harsH PunisHment sYstem, BY " TRooting " PRisoners with TECHiQUES THaT ARE, In Intent And PURPose, methods of PunisHment WHICH will make SERIOUSLY ill PRISonERS sicker, no Better. THESE TECHniQues include (i). oRDERin G THE suicidual inmate to underGo EXTreme isolation wHile lYinG naked In cold, stripped cells, sometimes wHile bound In FouR— Point Restraints And wHile InJected with mind — nUmbin G DRUGS AGainst His will; (ii). AllowinG GuaRds to handle An inmate moRe RouGhLY THan is necessARY wHile In the Health caRe unit oR wHile bRinG Him back to the unit oR wHile on the GallerY; (iii). wIthholdinG talkinG theRapY FRom An inmate because he IS demonstratinG DisRuptive BehaVioR THaT Is DiRectLY caused bY His mental illness; And (iv). DenYinG PRisoners tHE RiGht to send oR Receive mail ( IncludinG leGal mail ) And the RiGht to basic toiletries sucH AS a tootHBRUSH, ToothPaste, And DeodoRant. And soap wHile theY are In the Health caRe unit oR wHile theY ARE In theiR GalleRies .....*

(D). MENTAL HealtH TReatmenT AT PonTiac NEW ( NADU ) lAcks the commitment of A PsYcHiatrist to Identify And tReat In An Individualized manneR those PRIsoners sufFERinG FRom serious mental DisoRders ...* InsTead, THE PRisoN has been seRVed BY A seRies of PsYcHiatRists wHose main Function is to PResCRibe DRUGS insTead oF to oversee the IndiVidual monitoRinG, evaluation, And TReatmenT oF PRisonERS ....*

(E). DEFENDANTS, GARLIC And JOHN DOE, RoutinaLY Allow security concerns to compromise their duties to prisoners who are their patients. FoR EXAMPLY, they breach their promise of confidentiality to patients BY sending written mental Health ReportS to non-medical personnel, and they Allow security to dictate that mental Health sessions be conducted while the prisoner sits uncomfortably with His feet shackled to the floor And His hands cuffed behind His Back, IN A Room wHERE GuARDS Can over Hear THE conversation ....*

(F). DEFENDANTS Have established two " ELEVATED securitY " GALLERIES, wHERE a HiGhl PercenTaGe of the SERIOUSLY mentally ill Prisoners Are unJustifiabLY Isolated. no slecial mental Health TReatmenT IS Provided And THE conditions ARE even more HARSH AnD IsolatinG THAN theY Are elsewHere at PontiAc new ( NADU ). THE HiGh noise level And the sense of DanGer And CHAos on the GALLERIES, combined with the Reluctance of mental Health And other medical Personnel to venTure there, make the EXPerience of livin G on these GALLERIES even worse than the EXPerience of livinG ElsewHere at PontiAc new ( NADN ) ....*

(G). Accurate, complete, And confidential RecorDs of tHE mental Health treatment Process ARE not maintained. THE RecorDs PonTiac Receives From other PRISONS ARE InAccurate And incomplete And often ARRIve lonG After tHE inmate does; THE RECORDS PonTiac mainTains ARE incomplete And DisorGanized, And tHE ConfiDentiality of tHE Prisoner's communi cation is Breached RepeatedLY..

(H). THE ASSESSMENT AND TREATMENT OF SERIOUSLY MENTALLY ill
OR DECOMPENSATING PRISONERS SOMETIMES IS
DELAYED UNACCEPTABLY. * THESE DELAYS ARE CAUSED,
AMONG OTHER REASONS, BY (i). PONTIAC' RECEIPT
OF SKETCHY RECORDS FROM OTHER INSTITUTIONS; (ii). THE
REPETITIVE, DELIBERATE FAILURE OF CORRECTIONAL OFFICERS
TO RESPOND TO MENTAL HEALTH EMERGENCIES; AND (iii).
THE SYSTEMATIC REFUSAL OF PONTIAC MENTAL HEALTH WORKERS
TO IDENTIFY AND TREAT THE HIGH PERCENTAGE OF
PRISONERS WHO ARRIVE AT PONTIAC ( NAANI) SERIOUSLY
MENTALLY ill OR WHO DECOMPENSATE. THERE .... *

(i). BEHAVIOR – ALTERING MEDICATIONS ARE PRESCRIBED AND
ADMINISTERED IN DANGEROUS AMOUNTS. BY DANGEROUS
METHODS, OR WITHOUT APPROPRIATE SUPERVISION AND PERIODIC
EVALUATION .... *

(j). PRISONERS ARE PUNISHED FOR BEHAVIOR THAT IS DIRECTLY AND
OBVIOUSLY A CONSEQUENCE OF THEIR SERIOUS MENTAL ILLNESSES.
THIS PUNISHMENT INCLUDES: (1). DISCIPLINE METED OUT
INFORMALLY; SUCH AS TAUNTING A PRISONER WITH A FEROCIOUS
DOG OR SPRAYING CAUSTIC CHEMICALS IN HIS EYES BECAUSE,
IN A PLEA FOR ATTENTION.... * HE REFUSES TO GIVE UP HIS
FOOD TRAY; (2). DISCIPLINE IMPOSED THROUGH THE FORMAL
PRISON DISCIPLINARY PROCEDURE SUCH AS PUNISHING A
PRISONER FOR DESTROYING STATE PROPERTY BECAUSE HE
TRIED TO SWALLOW A PIECE OF MIRROR OR ATTEMPTED TO
HANG HIMSELF WITH A NOOSE FASHIONED FROM A STATE –
OWNED SHEET; AND (3). CRIMINAL CHARGES CAUSED TO
BE BROUGHT FOR RELATIVELY MINOR EVENTS THAT NORMALLY
ARE OVERLOOKED OR RESOLVED THROUGH THE PRISON DISCIPLINARY
PROCEDURE .... *

(k). PHYSICAL RESTRAINTS ARE USED IMPROPERLY TO PUNISH RATHER
THAN TO TREAT AND PROTECT MENTALLY ill PRISONERS .... *

(L). Isolation in a cold stripped cell is used to punish rather than to treat and protect mentally ill prisoners.

(M). Talking sessions with mental Health Professionals are used not to treat prisoners but to reward them for submissive conduct that may be Harmful to their mental state and often is Impossible for them to Achieve . . . *

(n). Even For those prisoners Identified as needing mental Health care, the care is Grossly substandard. The IDOC's contracts with wexford, signed year after Year by Defendant Godinze; contain no Performance standards; thus, it is no surprise that the state of Illinois pays Hundreds of millions of dollars, year after year for care that violates constitutional standards and Established legal norms . . . . *

(o). Access to the limited number of specialty mental Health units is limited and difficult. the standards for transfer to a facility with a specialty mental Health unit are unclear; prisoners with obvious mental Health needs may not be transferred to such facility at all. Even at facilities with specialty mental Health units, prisoners are refused assignment to the mental Health unit despite requesting it and despite being on, or Having been on, potent Psychiatric medications . . . . *

(P). Prisoners who ask to be transferred to mental Health units are Refused For reasons that have nothing to do with mental Health Treatment considerations ( e.G., too much segregation time). Grievances by inmates as to the Quality of care Provided in the mental Health units are Treated not as complaints about care, but as challenges to being assigned there. Prisoners are transferred out of mental Health units in retaliation for Filing Grievances, assisting other inmates in Grievances, or other reasons having nothing to do with Psychiatric care . . . *

(Q). WHAT limited AND ERRATIC care there is, is PROVIDED CHIEFLY BY BY medication. A PRISONER with PARANOID SCHIZOPHRENIA MAY MAY see A PSYCHIATRIST once A month, to "Re_up" His medications. AND A SOCIAL WORKER once A month. It CAN VERY EASY to Get oFF medications: Just ASK, OR stop taking the medications THEY ARE PRESCRIBED, OR to ENCOURAGE them — THROUGH therapeutic CONTACT, to stick with their medication REGIMES....*

(R). PRISONERS WHO ARE TRANSFERRED FROM one correctional FACILITY to Another MAY RECEIVE RADICALLY DIFFERENT QUALITIES of CARE, OR no CARE; DIFFERENT medications, OR no medications AT ALL..* inmates WHO ARE TRANSFERRED FROM one FACILITY To Another MAY be leFt without their medication because of DELAY IN ASSESSING them OR DELAY IN TRANSFER of their medical RECORDS, PUTTING them in SERIOUS, PERHAPS life — threatening DANGER....*

(S). THE DIAGNOSIS OF — OR FAILURE to DIAGNOSE — inmates' mental Health PROBLEMS BY mental Health PROFESSIONALS IN IDOC OR PONTIAC NEW (NADU), AND THE DAY-to-DAY TREATMENT of mentally ill PRISONERS BY STAFF, IS ROUTINELY POISONED BY THE NOTION oF "oFFender MANIPULATION;" And MENTALLY ill inmates ARE ROUTINELY CATEGORIZED AS uncooperative MALINGERERS..* Both REGULAR STAFF And suPPosed mental Health "PROFESSIONALS" FAIL to RECOGNIZE THE "uncooperative" AND "maniPulative" conduct AS THE SYMPTOMS oF mental illness WHICH they ARE...*

(T). CORRECTIONAL STAFF ARE noT TRAINED to deal with mentally ill. STAFF oFTen do not RESPOND to PRISONERS' threat to HARM themselves, AND use unnecessary Force on mentally ill PRISONERS..* PRISONERS on suicide watch ARE neGlected, abused, OR Both...* THEY can be striPPed naked; Placed In A cell with no mattress OR Blankets; PuT In Four—Point Restraints. In WINTER, STAFF In the PONTIAC NEW (NADU) will open the windows, And then sit And laugh ....*

19

(u).    Inmates who Engage in conduct due to their mental
illnesses are punished in absurd and irrational ways —
For instance, being given a Disciplinary Report and
segregation time for " damage to state property"
for destroying a jumpsuit in a suicide attempt or
for cursing at staff and inmates ...*

(v).    Mentally ill inmates accumulate large amount of segregation
time for disciplinary infractions caused by their mental
illness, but their mental illness is not taken into account
in the hearings about their infractions. Prisoners
are housed in Pontiac new (NADU), and given little
or no mental health care, despite having, for instance,
passionate beliefs that they are subjected of mind —
control" technology experiments by the IDOC.
mentally ill prisoners are sent to Pontiac new (NADU)
Pontiac most restrictive unit, without regard for the
damage the severe social and sensory deprivations of,
of Pontiac new (NADU) are likely to have on their
psychological state .. It is well — known that placing
mentally ill inmates in segregation or isolation is
highly likely to exacerbate their mental illness.
even without mental illness, many prisoners in isolation
experience mental deterioration; isolation is especially
dangerous to those who are already mentally ill ...*
studies have found that the effects of isolation
include: paranoid psychosis and uncontrolled rage,
including increased homicidal and suicidal impulses;
frequent schizophrenia; and impairment of the
ability to socially reconnect with others once released;
Yet mentally ill prisoners still accumulate years upon
years of " segregation" time in the IDOC going
beyond their prison sentence or are sent to Pontiac new
(NADU) .....*

20

(w). Likewise, Prisoners who were originally incarcerated for comparatively minor offense ( e.g., Burglary ) can end up spending more time in Prison due only to their mental illness than those Convicted of much more serious offenses ...*

(x). The units in which mentally ill Prisoners are Housed — both the mental Health unit and ( NADU ) themselves and other locations where they may be Placed — are often Filthy, Vermin — Rodents and Insects Infestations and Filled with Human waste ...* This is True of Individual cells and of common Areas, such As showers, staff do not clean them, and inmates are not able to clean them.. In the Pontiac ( NADU ). For Instance, inmates are Given a Halfcup of Green soap once a week to clean their cells . In the beginning. They Are Also Given a sponG, But once the slonG wears out they Are not Given A new one ...*

(Y). The careless, Inconsistent, and Indifferent care Plaintiffs' have Received for His mental illness is Emblematic of Defendants' violations of the Constitutional and Legal Rights of the Plaintiff And their deliberate Indifference to him ...* Plaintiff have suffered and will Continue to suffer GreAtely And unnecessarily as a Result ...*

2. DEFENDANTS' DELIBERATE INDIFFERENCE TO PLAINTIFFS' SERIOUS MENTAL HEALTH needs Also is shown BY A SERIOUS OF INCIDENTS OF MISTREATMENT ...*

45. Mr. Knox is a 40 - Year - old man From Lake County, Illinois who has been in long - term Administrative segregation and Isolation since July of 1999, who was Transferred From Tamms supermax in December of 2012 to Pontiac New ( NADU ); He was been Incarcerated in Institutions Run BY the Department Since 1994, originally on A charge of Attempted First Degree murder! His tentative Release Date is 2034 ...*

21

46. MR. KNOX. CAME TO PONTIAC NEW ( NADU) WITH AN EXTENSIVE HISTORY OF PSYCHIATRIC PROBLEMS, AS DEFENDANTS KNEW ...✱ THROUGHOUT HIS INCARCERATION ; MR. KNOX HAS SUFFERED FROM A SERIOUS MENTAL ILLNESS THAT HAS CAUSED HIM TO SUFFER FROM MAJOR — DEPRESSION / PTSD: CAUSE HIM TO HEAR VOICES AND TO HAVE OTHER AUDITORY PERCEPTUAL DISTURBANCES. CONTROLLED IMPULSE DISORDERS. AS A CONSEQUENCE OF HIS ILLNESS, HE HAS ATTEMPTED SUICIDE AND MUTILATED HIS BODY BY CUTTING AND SLASHING HIS ARMS, AND INSERTING FOREIGN-OBJECT'S INTO HIS URETHA ...✱ WHILE INCARCERATED AT THE DEPARTMENT BEFORE COMING TO PONTIAC NEW ( NADU), MR. KNOX WAS TREATED WITH PSYCHOTHERAPY OF THE ANTIDEPRESSANT PROZAC. MEDICINE A DRUG THAT IS MEDICALLY APPROPRIATE FOR PEOPLE SUFFERING FROM SERIOUS MENTAL ILLNESSES. SEVERAL TIME BEFORE COMING TO PONTIAC NEW ( NADU), MR. KNOX, HAS BEEN TO HEALTH CARE UNIT OF THE PRISON FOR MENTAL HEALTH REASONS ...✱

47. BEFORE MR. KNOX WAS TRANSFERRED TO PONTIAC NEW ( NADN), MR. KNOX, HAD VISITED MONTHLY WITH A PSYCHIATRIST AND ONCE EVERY TWO WEEKS VISITED WITH A SOCIAL WORKER AT TAMMS SUPERMAX AND HAD BEEN TAKING PROZAC. MR. KNOX HAD A GOOD RELATIONSHIP WITH THE TAMMS PSYCHIATRIST, AND THE TWO OF THEM BELIEVED THAT MR. KNOX, WAS DOING FAIRLY WELL, EXCEPT WHEN HE DIDN'T GET HIS MEDICATIONS.

48. ON OR ABOUT DECEMBER 23, 2012, MR. KNOX, WAS TRANSFERRED TO PONTIAC NEW ( NADU). DEFENDANTS DID NOT IMMEDIATELY RESTART THE PROZAC AND THEY PROVIDED NO SUPPORTIVE ___ RELATIONSHIP ...✱ IMMEDIATELY, THE SIGNS THAT TAMMS DOCTOR HAD WARNED ABOUT — BEGAN TO APPEAR ...✱

49. Within A Week of His Transfer to Pontiac New (NADU), MR. Knox warned mental health workers that He was having Problems And needed to take His Prozac... He told A social worker he was "Depressed" Frantic, And having Problems controlling His Impulses And can't think straight. He showed mental Health staff A live mouse that he kept in A milk cup As A Pet And said he was hearing Voices telling Him to snap, to Assault staff And other Prisoners, to tear up His cell ...* He said he was seeing His dead Brother who died in MR. Knox Arms As A child And His Grandmother who raise MR. Knox ...*

50. Despite the disdain of defendants for MR. Knox's Serious mental Problems, the Psychiatric staff has not Hesitated to medicate MR. Knox heavily. Since coming to Pontiac New (NADU), He has received various combination of Prozac, Trazidom, (An Anti-Depressant drug) And Thorazine (Behavior-Altering Antipsychotic drugs). *

51. Most Recently MR. Knox, has mutilated Himself Again By Inserting another Foreign-object into His urethra, Pontiac New (NADU) does not have A special Treatment unit (STU) And Pontiac New (NADU) Is being used To modify Seriously mentally ill Prisoners Behavior As A Form of Punishment but not to Treat his underlying Illnesses ....*

52. The combination of Insensitive, Hostile Treatment, And Haphazard Administration of Potent mind-Altering drugs Has been devastating For MR. Knox, who wishes everyday to be Released From Pontiac New (NADU) ....*

30. DEFENDANTS HAVE UNNECESSARILY AND WANTONLY INFLICTED SEVERE PAIN ON PLAINTIFF BY EXPOSING HIM TO THE CONDITIONS AT PONTIAC NADU.

53. DEFENDANTS ARE AWARE THAT THE EXCESSIVELY HARSH AND THE PSYCHOLOGICALLY DAMAGING CONDITIONS AT PONTIAC NEW NADU EXACERBATE EXISTING MENTAL ILLNESSES AND TRIGGER SERIOUS MENTAL ILLNESSES IN PRISONERS WHO PREVIOUSLY WERE NOT SERIOUSLY ILL. DESPITE THIS KNOWLEDGE, THEY CONTINUE TO SEND SEVERELY MENTALLY ILL PRISONERS TO PONTIAC NEW NADU, ALLOW THEM TO REMAIN THERE FOR LONG PERIODS OF TIME AS THEIR ILLNESSES WORSEN, AND ALLOW OTHER PRISONERS TO REMAIN AFTER THE CONDITIONS AT PONTIAC NEW NADU HAVE TRIGGERED SERIOUS MENTAL ILLNESSES IN THEM. IN EXPOSING THESE PRISONERS TO THE CONDITIONS AT PONTIAC NEW NADU, THE DEFENDANTS HAVE UNNECESSARILY AND WANTONLY INFLICTED PAIN ON PLAINTIFF ....*

## COUNT I

DELIBERATE INDIFFERENCE TO SERIOUS MENTAL HEALTH NEEDS IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS

PLAINTIFFS REALLEGES PARAGRAPHS (1-89) AS IF FULLY SET FORTH HEREIN.

54. PLAINTIFF HAVE A SERIOUS MEDICAL NEED OR CONDITION, NAMELY MENTAL ILLNESS OR MENTAL HEALTH CONDITIONS, WHICH REQUIRE TREATMENT ....*

55. DEFENDANTS' POLICIES, PRACTICES, AND CUSTOMS ARE DESIGNED TO INTENTIONALLY FAIL TO DIAGNOSE OR TREAT LARGE NUMBERS OF MENTALLY ILL PRISONERS. DEFENDANTS HAVE DISPLAYED AND CONTINUE TO DISPLAY DELIBERATE INDIFFERENCE TO PLAINTIFFS' MENTAL HEALTH NEEDS ....*

56.  DEFENDANTS' ACTS AND omissions Constitute CRuel AND unusual Punishment oF Plaintiffs And violated the EIGHTH AND the FourteentH AmenDments to THE United States Constitution .....*

57.  DEFenDAnts' Policies, PRACTices, customs, ACTs, And omissions Place Plaintiffs AT unReasonable, Continuing, And foreseeable Risk oF DevelofinG oR EXACerbatinG serious medical And mentAl Health Problems .....*

58.  DEFenDAnts' violations oF Plaintiffs' Constitutional RiGhts Has inflicted both PHYsical And mental harm And injurX, IncludinG BY causinG AVoidable Pain, mental SuFFerinG, And Deterioration of His Health .....*  ufon InFormation And Belief, In some case it has Resulted in PremAture Death ....*

59.  As A Proximate Result oF defenDAnts' unconstitutional Policies, PRACTices, customs, ACTs, omissions, And Deliberate _____ IndiFFerence, PlaintiFFs Have suFFered And will continue To suffer Immediate And irrefarable InJuRY, IncludinG PHYsical, PsYcHoloGical, And EmoTional InjueY And Risk of Death .....*  PlaintiFF have no PlAin, AdeQuate, oR Complete RemedY At LAW to AdDRess the wRonG Described HEREIN .....*

Count II

unconstitutional ConDitions FoR SERIOUSLY MENTAllY Ill PResoners In Violation oF THE EIGHTH AND FourteentH AMENDMenTS

PlaintiFF REAllEGE PARA GRAPHS ( 1-80) As FullY set ForH HEREIN .

60.  In subjectinG PlaintiFFs' to the unconstitutional ConDitions Described Above, THE InDividual defenDAnts violated the RiGhts oF PlaintiFFs And THE PlaintiFF to be FRee oF CRuel And unusual PunisHment under THE EIGHTH And FourteentH AmenDments to the u.s. Constitution .....*

## Count III

### Violation of Eighth and Fourteenth Amendments Based Upon Failure to Train or Supervise

Plaintiff reallege paragraphs (1-80) as if fully set forth herein.

61.    Defendants fail to adequately train or supervise individuals in their employ or under their control and supervision as to how to properly respond to and interact with prisoners with serious mental health needs . . . . *

62.    Defendants' failure to adequately train or supervise violates Plaintiffs' Constitutional Rights . . . . *

63.    As a proximate result of Defendants' failure to train, Plaintiffs' have suffered, and will continue to suffer, deprivation of the rights secured under the Constitution and Laws of the United States . . . * Such deprivations are causing and will continue to cause immediate and irreparable injury, including physical, psychological, and emotional injury and the risk of death. Plaintiffs' have no plain, adequate or complete remedy at law to address the wrongs described herein . . . . *

### Count IV

### Violation of Liberty Interest under the Due Process Clause of the Fourteenth Amendment

Plaintiff reallege paragraphs (1-80) as if fully set forth herein.

64.    Defendants' policies and procedures and acts or omissions which cause Plaintiffs to be placed in isolated environments for extended periods impose an atypical and significant hardship on Plaintiffs in relation to the ordinary incidents of prison life . . . . *

26

65. DEFENDANTS' Policies And Procedures And ACTS OR omissions which fail to take into Account Plaintiffs' mental illness in imposing Additional Punishment violate Plaintiffs' liberty interests And Due Process Rights secured under the Fourteenth Amendment of the U.S. Constitution ....*

66. As a Proximate Result of DEFENDANTS' CONDUCT. Plaintiffs have suffered, and will Continue to suffer, deprivation of the Rights secured under the Constitution And Laws of the united states.. Such deprivations Are Causing And will Continue to Cause immediate And irreparable injury.. Plaintiff have no Plain, Adequate or complete Remedy At Law to Address the wrong described Herein ....*

## Count - V

## Title II of the AMERICANS With Disability Act

Plaintiff Reallege Para Graphs ( 1-80) As iF fully set Forth Herein.

67. Each of the IDOC Facilities Housing Plaintiff Are Public Public Entities As that term is defined in 42 u.s.c. § 12131. All DEFENDANTS At All Relevant time Acted in their official Capacities As Representive of At least one of these Public Entities ....*

68. Plaintiffs' Are otherwise Qualified individual with a Disability As defined under the ADA And its implementing Regulations, including 42 u.s.c. § 12131 ( 2) And § 12102 ( 2)...* Plaintiffs' have mental And/or physical impairments that substantially limit one or more major life Activities; or they have Records of having such impairments; or they Are Regarded such Impairments ....*

27

69. Plaintiffs' meet THE Essential eliGibility ReQuirements for THE Receipt of services or the ParticiPation in ProGrams or Activities Provided BY DefenDants ....*

70. DefenDants Have Discriminated AGainst Plaintiffs' on the Basis of His Disabilities In the FollowinG ways:

A). RefusinG to Provide Plaintiffs' with ProPer TreatmenT for His serious mental illness Despite KnowledGe of such serious mental illness ....*

B). FailinG to ReasonablY AccomoDate the Plaintiffs' Disabilities And Instead DiscriminatinG AGainst Him in ways that InCrease the severity of His illness BY such methods As PlacinG Him In AOministrative seGreGation or other Isolated environments As PunishmenT;

C). FailinG to ReasonablY Accomodate THE Plaintiffs' Disabilities And Instead DiscriminatinG AGainst Him In ways that InCrease the severity of His illness, BY such methods As DePrivinG Him of clothes, Heat, or sanitarY surroundinGs;

D). FailinG to Reasonably Accomodate the Plaintiffs Disabilities BY RefusinG to TRansfer Plaintiff to mental Health units And HousinG Him in elevated security Divisions or Tiers, or Galleries, or General PoPulation divisions, which Are esPecially CHaotic, noisY, Isolated And offer less or no mental Health TreatmenT, And Also InCrease the likelihood of serious PHysical And mental harm Due to the Fact that staff And GuarDs In such Divisions Are not TRained to InteRACT with mentallY ill Detainees ....*

E.d.    Failing to Reasonably Accomodate Plaintiffs Disabilities
        And Instead Discriminating AGainst Him in Ways that
        Increase the severity of His illnesses BY such methods As
        ADJudicating Disciplinary charGes without Reference to
        Relevant mental Health Records And BY failing to Assist
        mentally ill inmates In the Grievance Process And instead
        Acting to thwart His Efforts to File Grievances And
        Pursue them through the ADministrative Process;

F.J.    Denying Plaintiffs' Access to ProGrams, Activities, And
        services of the Department Granted at Illinois Prisons
        other than Pontiac And New (NADU) such As Contact
        with other Prisoners or Access to Prison Jobs, Rehabilitative
        or educational ProGramming, Group therapY, outDoor
        Exercise, communal ReliGious ProGramming, An ADeQuate
        Law LibrarY, the use of ART supplies And other Personal
        ProperTY that could Enrich the Quality of His life, the
        Ability to talk to Friends And Relatives BY telePhone,
        And An APProPriate setting For contact visitation; And.

71.     In ActinG In the manner AlleGed Above, DeFenDants have
        unlawFully Discriminated AGainst Plaintiffs' In violation of
        the ADA ....*

72.     As A Proximate Result of DeFenDants' wrongFul ConDuct, the
        Plaintiffs have suffered, And will continue to suffer ___
        immediate And irreparable harm And InJurY, IncludinG
        PHYsical, PsYcholoGical, And Emotional InJurY, IncludinG
        the Risk of Death .. Plaint.FFs' have no Plain, ADeQuate,
        or Complete RemedY AT Law to ADDress the wronG Described
        Herein ....*

Count VI

Violation of section 504 of the Rehabilitation Act

Plaintiff realleges paragraphs (1-80) as if fully set forth herein.

73. Upon information and belief, the IDOC receives federal financial assistance, thus, making it subject to section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (A) and 705 (20).

74. Each of the IDOC; Plaintiffs' is an otherwise qualified individual with a disabilities as defined in the Rehabilitation Act and implementing regulations.... * Plaintiffs' have mental and/or physical impairments that substantially limit one or more major life activities; or they have records of having such impairments; or they are regarded as having such impairments.... *

75. Plaintiffs' meet the essential eligibility requirements for for the receipt of services or the participations in programs or activities provided by defendants... *

76. Defendants have discriminated against the Plaintiffs' based upon his disabilities in the following ways:

A). Refusing to provide plaintiff with proper treatment for his serious mental illness despite knowledge of such serious mental illness;

B). Failing to reasonably accommodate Plaintiffs' disabilities and instead discriminating against him in ways that increase the severity of his illness by such methods as placing him in administrative segregation or other isolated environments as punishment;

30

C ). Failing to reasonably accommodate Plaintiff and his Disabilities and instead Discriminating against Him in ways that increase the severity of His mental illness by such methods as depriving Him of clothes, Heat, or sanitary surrounding;

D ). Failing to reasonably accommodate Plaintiffs' Disabilities by Refusing to transfer Plaintiff to mental Health units Housing Him in elevated security Divisions or tiers or Galleries or General Population Divisions, which are especially chaotic, noisy, isolated and offer less or no mental Health Treatment, and also increase the likelihood of serious Physical and mental harm due to the Fact that the staff and Guards in such Divisions are not trained to interact with seriously mentally ill Detainees ... *

E ). Failing to reasonably accommodate Plaintiff Disabilities and instead Discriminating against Him in ways that increase the severity of His illness by such methods as adjudicating disciplinary charges without Reference to Relevant mental Health Records and by Failing to assist mentally ill inmates in the Grievance Process and instead acting to thwart His Efforts to File Grievances and Pursue them through the Administrative Process;

F ). Denying Plaintiff Access to Programs, Activities, and Services of the Department Granted at Illinois Prisons other than Pontiac and/or NADU, such as Contact with other Prisoners or Access to Prison Job, Rehabilitative or Educational Programming, Group therapy, outdoor Exercise, Communal Religious Programming, an Adequate Law Library, the use of Art Supplies and other Personal Property that could Enrich the Quality of His life, the Ability to Talk to Friends and Relatives by telephone, and an appropriate Setting for Contact visitation ... * and

31